UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FERDINAND KIPKORIR KIBOR,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondents.[1]

CASE NO. 2:26-cv-01727-JNW

ORDER GRANTING HABEAS CORPUS PETITION IN PART

This matter comes before the Court on Petitioner Ferdinand Kipkorir Kibor's petition for a writ of habeas corpus, Dkt. No. 1. The Court GRANTS the petition IN PART for the reasons stated below.

## 1.  BACKGROUND

Immigration and Customs Enforcement (ICE) has detained pro se Petitioner Ferdinand Kipkorir Kibor, a citizen of Kenya, at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, for the past fourteen months. Dkt. No.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes U.S. Immigration and Customs Enforcement Acting Seattle Field Office Director Julio Hernandez for Laura Hermosillo.

1. Kibor first entered the United States on July 7, 2016, on a non-immigrant B-2 visa. Dkt. No. 12 ¶ 4. Kibor overstayed his visa, and on May 10, 2025, he was arrested by immigration authorities and booked into the NWIPC. *Id.* ¶ 5.

Kibor was served a Notice to Appear in immigration court—he appeared on August 19, 2025, however the Immigration Judge reserved ruling. *Id.* ¶ 7. On October 29, 2025, the IJ denied Kibor bond finding that he was a flight risk. *Id.* ¶ 9. On December 8, 2025, the IJ issued a written decision from the August 19, 2025, hearing, ordering Kibor's removal, but granting withholding of removal to Kenya. *Id.* ¶ 10; Dkt. No. 11-2. Kibor did not appeal this decision, *Id.* ¶ 10, and it became administratively final when the thirty-day appeal period lapsed. *See, Diouf v. Mukasey*, 542 F.3d 1222, 1229 (9th Cir. 2008); C.F.R. § 1241.1(c) (providing that removal order becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time"). Dkt. No. 11-2 at 13. Respondents compute that date as January 5, 2026.

Since then, Respondents attest that on January 8 and January 23, 2026, ICE agents have asked Kibor to select a third country for removal, but that Kibor has refused to pick a country. *Id.* ¶ 11. On February 14, 2026, ICE informed Kibor that he would be removed to Uganda. *Id.* ¶ 13. Kibor immediately expressed fear of removal to Uganda and he was referred for a credible fear interview with United States Citizenship and Immigration Services (USCIS). *Id.* On March 6, 2026, USCIS issued a negative reasonable fear determination. *Id.* ¶ 15. On May 21, 2026, just one day after Kibor filed his habeas petition in federal court, Dkt. No. 1., ICE issued Kibor a Notice of Imminent Removal, stating that his removal to Cameroon

would occur on May 27, 2026. Dkt. No. 12 ¶ 16. Kibor filed a motion for a temporary restraining order to enjoin his imminent removal—this Court provisionally granted the motion to permit time to review the underlying habeas petition. Dkt. Nos. 5, 6. ICE withdrew the notice the next day, and a reasonable fear screening as to Cameroon remains pending. Dkt. No. 12 ¶ 18; Dkt. No. 10 at 6, 10.

## 2.  LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. § 2254). A district court's habeas jurisdiction extends to challenges to immigration-

related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

### 3.   DISCUSSION

**3.1   Kibor's detention violates due process.**

Kibor argues that his continued detention violates due process because there is no significant likelihood he will be removed in the reasonably foreseeable future. The Court agrees.

In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6) "does not permit indefinite detention." 533 U.S. at 689. Rather, it allows detention only for "a period reasonably necessary to bring about that [noncitizen]'s removal from the United States." *Id*. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. The Court established six months as the "presumptively reasonable" period of post-removal-order detention. *Id*. at 701. After six months, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Importantly, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*. The Government's burden to justify continued detention thus becomes increasingly demanding over time.

Kibor is detained under 8 U.S.C. § 1231(a)(6), which authorizes continued detention after the 90-day removal period for certain categories of noncitizens or release under conditions of supervision. *See Zadvydas*, 533 U.S. at 682. His removal

order became administratively final on January 5, 2025, when time to appeal the order lapsed. Respondents argue that Kibor is still within his six-month post-order detention period. Dkt. No. 10 at 6–8. That was true when the Return was filed on June 3, 2026, but it is no longer. The presumptively reasonable period expired on July 5, 2026.

That the period expired only recently does not save Respondent's position. The six-month period "creates a presumption of reasonableness, not automatic immunity from review," and the *Zadvydas* framework requires the Court to assess not only how long Kibor has been detained, but whether his removal is reasonably foreseeable. *Uprety v. Bondi*, No. 2:25-cv-02443-JNW-MLP, 2026 WL 194227, at *3 (W.D. Wash. Jan. 26, 2026).

Kibor has shown that there is no good reason to believe that his removal is likely to occur in the reasonably foreseeable future. First, there is no dispute that Kibor's removal to Kenya is foreclosed, due to the IJ's grant of withholding. Dkt. No. 11-2. Second, Respondents concede that "ICE is no longer pursuing removal of Petitioner to Uganda," Dkt. No. 10 at 10, a country they proposed in February 2026 and have not removed him to in the five months since. That leaves Cameroon, which ICE designated one day after this petition was filed and abandoned the next. Dkt. No. 12 ¶¶ 16, 18.

Respondents do not respond with evidence to rebut this showing. Respondents provide only conclusory statements about their overall interest in removing Kibor. Dkt. No. 10 at 8 (stating that "ICE has taken continuous steps to effectuate Petitioner's removal since that time"). The Court accepts that

ORDER GRANTING HABEAS CORPUS PETITION IN PART - 5

Respondents may be pursuing third-country removal. *See generally*, Dkt. No. 12. But Detention Officer Baz's declaration only discusses past failed attempts at removal and states that "should ERO issue another Notice of Imminent Removal, it will do so in accordance with the WDWA's scheduling order." *Id.* ¶ 18. DO Baz does not attest to any facts within his personal knowledge regarding any third country's willingness to accept Kibor. These conclusory statements are not enough. This is particularly concerning given that Kibor has cumulatively served more than a year in ICE detention, six months of which followed his final order of removal. *See, e.g.*, *Sun v. Hernandez*, No. 2:26-cv-01013-JNW, 2026 WL 1194798, at *3 (W.D. Wash. May 1, 2026).

Respondents' evidence of Kibor's noncooperation also does not carry its burden. The Ninth Circuit has held that a noncitizen who "refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government" cannot meet their burden under *Zadvydas* to show that removal is not reasonably foreseeable. *Lema v. I.N.S.*, 341 F.3d 853, 856 (9th Cir. 2003). In application, courts have found that detainees cannot meet their *Zadvydas* burden when they engage in affirmative obstruction such as giving false information about one's nationality or refusing to complete a passport application. *See Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003); *Lema v. I.N.S.,* 341 F.3d at 857. Here, Respondents rely on the DO Baz declaration as evidence that Kibor has not cooperated with his third country removal because he refuses to select a third country for removal. Dkt. No. 10 at 5; Dkt. No. 12 ¶ 11. Kibor's failure to select a third country does not amount to an affirmative misrepresentation or refusal to complete travel arrangements. *Kara*

ORDER GRANTING HABEAS CORPUS PETITION IN PART - 6

*v. Bondi*, No. 2:26-cv-00105-JHC, 2026 WL 322772, at *4 (W.D. Wash. Feb. 6, 2026) (finding insufficient evidence of noncooperation where the government's sole evidence is its assertion that petitioner did not identify a third country); *Sun v. Hernandez*, 2026 WL 1194798, at *3 (same).

Respondents argue that the July 9 ICE memorandum and Kibor's purported membership in the *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025) class precludes Kibor's requested relief. Dkt. No. 10 at 9–12. The Court disagrees. First, courts in this district have held that the procedures outlined in the July 9 ICE memo violates due process. *See, e.g.*, *Kumar v. Wamsley,* No. C25-2055-KKE, 2025 WL 3204724, at *6 (W.D. Wash. Nov. 17, 2025) (finding that ICE's third country removal policy violates due process); *Nguyen v. Scott,* 796 F. Supp. 3d 703, 728 (W.D. Wash. 2025) (holding that the memo "contravenes Ninth Circuit law," requiring notice of third country removals and opportunity to apply for fear-based protections); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2 (W.D. Wash. Oct. 23, 2025) (same). Second, Kibor's potential membership in the *D.V.D.* certified class does not bar his individual claims. Numerous courts in this district have already rejected this argument. *See Nguyen,* 796 F. Supp. 3d at 730–31. The Supreme Court's stay of the *D.V.D.* preliminary injunction does not deprive this Court of jurisdiction to adjudicate Kibor's individual habeas claims. In any event, the claim on which the Court grants relief is not the third country removal claim at issue in *D.V.D.*, but a challenge to the lawfulness of Kibor's prolonged detention under *Zadvydas*.

Finally, Respondents state that on October 29, 2025, an IJ denied Kibor bond, finding that he posed a flight risk. Dkt. No. 10 at 5 (citing Dkt. No. 12 ¶ 9). Perhaps the finding was sound, but it does not authorize Kibor's present detention. The bond denial was a discretionary custody determination made under 8 U.S.C. § 1226 while Kibor's removal proceedings were pending, months before his removal order became final. Kibor is now held under 8 U.S.C. § 1231(a)(6). While a risk of flight may justify detention while removal is being accomplished, *Zadvydas*, 533 U.S. at 690, it does not authorize detention once removal is no longer reasonably foreseeable, because detention then no longer serves the purpose that justifies it. Any risk of flight is addressed through conditions of supervision.

Thus, because there is no significant likelihood of Kibor's removal in the reasonably foreseeable future, his continued detention is no longer authorized by statute and violates due process. He must be released. And because release resolves the detention Kibor challenges, the Court does not reach his remaining requests for relief concerning third country removal.

## 4. CONCLUSION

Accordingly, the Court orders as follows:

1. The Petition for a Writ of Habeas Corpus, Dkt. No. 1 is GRANTED IN PART.

2. Respondents must RELEASE Petitioner from custody within TWENTY-FOUR (24) hours of this order, subject to appropriate conditions of release. *See Zadvydas*, 533 U.S. at 696 (citing 8 U.S.C. § 1231(a)(3); 8 U.S.C. § 1253; 8 C.F.R. § 241.5 ("Conditions of release after removal period")).

ORDER GRANTING HABEAS CORPUS PETITION IN PART - 8

3. Respondents may not re-detain Petitioner without providing written notice of the basis for proposed re-detention in advance and a meaningful opportunity to respond, except as authorized under 8 C.F.R. § 241.13(i)(1)–(2).

4. Within FORTY-EIGHT (48) hours of this order, Respondents must provide the Court with a status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

5. Petitioner's remaining requests for relief are DENIED WITHOUT PREJUDICE.

Dated this 17th day of July, 2026.

Jamal N. Whitehead
United States District Judge

ORDER GRANTING HABEAS CORPUS PETITION IN PART - 9